Steven J. Luckner, Esq.
**OGLETREE, DEAKINS, NASH,**
**SMOAK & STEWART, P.C.**
10 Madison Avenue, Suite 400
Morristown, New Jersey 07960
Telephone: (973) 656-1600
Facsimile: (973) 656-1611
*Attorneys for Defendant Teladoc Health, Inc.*

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

----------------------------------------------------------

| | |
|---|---|
| NICHOLAS CAUGHEL, | : Hon. _____ |
| | : Civ. Action No.: _____ |
| Plaintiff, | : |
| | : |
| v. | : |
| | : **NOTICE OF REMOVAL & LOCAL** |
| TELADOC HEALTH, INC., JOHN DOES (1-10) (fictitious names of unknown persons) and ABC COMPANIES (1-10) (fictitious names of unknown entities), | : **CIVIL RULE 11.2 CERTIFICATION** |
| | : |
| | : |
| | : |
| | : |
| Defendants. | : |

----------------------------------------------------------

**TO:    CHIEF JUDGE AND JUDGES OF**
**THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

**ON NOTICE TO:**

Christopher J. Eibleler, Esq.
SMITH EIBELER, LLC
101 Crawfords Corner Roade, Suite 1-105R
Holmdel, New Jersey 07733
*Attorneys for Plaintiff*

Michelle M. Smith, Esq., Clerk
The Superior Court of New Jersey
Richard Hughes Justice Complex
6th Floor North Wing
Trenton, New Jersey 08625

Clerk, Superior Court of New Jersey
Law Division – Monmouth County

71 Monument Park
Freehold, New Jersey 07728-1266

**HONORABLE JUDGES:**

Defendant Teladoc Health, Inc. ("Defendant"), by and through its counsel, Ogletree, Deakins, Nash, Smoak & Stewart, P.C., hereby notices the removal of this action, pursuant to 28 U.S.C. §§ 1331, 1332, 1367, 1441, and 1446, to the United States District Court for the District of New Jersey, and as grounds therefore show as follows:

### I.    TIMELINESS OF REMOVAL

1.    On or about May 27, 2020, Plaintiff Nicholas Caughel ("Plaintiff") commenced a civil action against Defendant in the Superior Court of New Jersey, Monmouth County, entitled *Nicholas Caughel vs. Teladoc Health, Inc.*, Docket No.: MON-L-1637-20.

2.    Plaintiff effected service of the Summons and Complaint on Defendant on June 2, 2020 by delivering a copy of the Summons and Complaint to the Defendants registered agent for service of process.  A copy of the Summons, Complaint, Civil Case Information Statement, and Track Assignment Notice, are attached hereto as Exhibit A.

3.    This is the only process, pleading, or order known by Defendant to have been served in this action.

4.    Pursuant to 28 U.S.C. § 1446(b), a Notice of Removal must be filed within 30 days after the receipt by defendant, through service or otherwise, of the Complaint.

5.    Accordingly, pursuant to 28 U.S.C. § 1446(b), this Notice of Removal has been timely filed within 30 days after receipt by any defendant, through service or otherwise, of the Complaint.

### II.    VENUE

6.     The New Jersey Superior Court, Monmouth County, is located within the District of New Jersey.  28 U.S.C. § 110.  Therefore, venue is proper in this Court because it is the "district and division embracing the place where such action is pending." 28 U.S.C. § 1441(a).

### III.     FIRST BASIS FOR REMOVAL – FEDERAL QUESTION

7.     This action is properly removable under 28 U.S.C. § 1331, because the United States District Court has original jurisdiction pursuant to 28 U.S.C. § 1331, which provides that "The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."

8.     Plaintiff's Complaint alleges that Defendant violated the Family and Medical Leave Act, 29 U.S.C.S. §2601 *et seq.*, and asserts related claims under the New Jersey Law Against Discrimination, N.J.S.A. 10:5-1 *et seq.* ("NJLAD") and the New Jersey Family Leave Act N.J.S.A. 34:11B-1, *et seq.  See* Count I of the Complaint attached hereto as Exhibit A.  By asserting claims under federal law, the Family and Medical Leave Act, Plaintiff's Complaint asserts a federal question under 28 U.S.C. § 1331.

9.     Accordingly, this case is properly removable under 28 U.S.C. § 1331.

### IV.     SECOND BASIS FOR REMOVAL – DIVERSITY JURISDICTION

10.     This action is properly removable under 28 U.S.C. § 1332(a), because the United States District Court has original jurisdiction in this case under 28 U.S.C. § 1332(a), which provides that "The district courts shall have original jurisdiction in all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between (1) citizens of different states…."  Here, the amount in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between citizens of different states.  This

was true at the time of filing of the Complaint and remains true at the time of the filing of this Notice of Removal.

### A.   AMOUNT IN CONTROVERSY

11.     This is an action to recover damages for alleged violations of the Family and Medical Leave Act, the New Jersey Family Leave Act and the NJLAD.  According to the Complaint, Plaintiff seeks an award of compensatory damages, including front and back pay; punitive damages; emotional distress damages; costs of suit; and attorneys' fees. *See* Complaint, Wherefore Clause.  Based on the allegations in the Complaint, the amount in controversy exceeds the sum or value of $75,000, exclusive of interest and costs. *See Raspa v. Home Depot*, 533 F. Supp. 2d 514, 522 (D.N.J. 2007); *Uddin v. Sears, Roebuck & Co.*, 2014 WL 316988, *5 (D.N.J. Jan. 27, 2014).

### B.   DIVERSITY OF CITIZENSHIP

12.     A corporation shall be deemed to be a citizen of every State and foreign state by which it has been incorporated and of the State or foreign state where it has its principal place of business. 28 U.S.C.  § 1332(c)(1).  A corporation has its principal place of business where its high level officers direct, control, and coordinate the corporation's activities, *i.e.*, its "nerve center," which will typically be found at its corporate headquarters. *Hertz Corp. v. Friend*, 559 U.S. 77 (2010).

13.     According to the Complaint, Plaintiff is a citizen of the State of New Jersey. *See* Complaint, Introductory Paragraph.

14.     Teladoc Health, Inc. is a corporation organized under the laws of the State of Delaware and having its principal place of business in the State of New York.  Defendant therefore is a citizen of Delaware and New York within the meaning of 28 U.S.C. § 1332.

15.     Accordingly, complete diversity of citizenship exists.

**V.     <u>SUPPLEMENTAL JURISDICTION</u>**

16.     This Court has supplemental jurisdiction over Plaintiff's state law New Jersey Family Leave Act and NJLAD claims. Pursuant to 28 U.S.C. § 1367, this Court has supplemental jurisdiction over all other claims that are so related to Plaintiff's federal causes of action "that they form part of the same case or controversy under Article III of the United States Constitution." State law claims fall within this Court's supplemental jurisdiction when they share with the federal claims "a common nucleus of operative fact … such that [the plaintiff] would ordinarily be expected to try them all in one judicial proceeding." *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 725 (1966).

17.     Here, Plaintiff's New Jersey Family Leave Act and NJLAD claims arise out of a common nucleus of operative facts pertinent to his Federal Family and Medical Leave Act claims. Indeed, both the state and federal claims arise out of Plaintiff's employment with Defendant; Plaintiff's taking of family leave; and Plaintiff's termination. Therefore, this Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367. Moreover, there is no reason why this Court should not exercise supplemental jurisdiction over Plaintiff's state law claims. Plaintiff's state law claims neither raise novel or complex issues of State law nor predominate over the claims over which this Court has original jurisdiction, and there are no exceptional circumstances or other compelling reasons for this Court to decline supplemental jurisdiction. *See* 28 U.S.C. § 1367(c). Thus, removal is proper under 28 U.S.C. § 1441(c).

**VI.     <u>CONCLUSION</u>**

18.     Defendants have not previously sought similar relief.

19.     To date, Defendants have not filed a responsive pleading in Plaintiff's State court action, and no other proceedings have transpired in that action.

20.     Pursuant to 28 U.S.C. § 1446, copies of this Notice of Removal have this day been served by overnight mail upon Plaintiff's counsel, and upon the Clerk of the Superior Court of New Jersey, and the Clerk of the Superior Court in Monmouth County, New Jersey.

21.     By removing this matter, Defendants do not waive or intend to waive any defense, including but not limited to insufficiency of process and insufficiency of service of process.

**WHEREFORE**, Defendants respectfully request that this Honorable Court take jurisdiction of this action and issue all necessary orders and process to remove said action from the Superior Court of New Jersey, County of Monmouth, to the United States District Court for the District of New Jersey.

Respectfully Submitted,

**OGLETREE, DEAKINS, NASH,
SMOAK & STEWART, P.C.**
*Attorneys for Defendant*

By:     s/ Steven J. Luckner
Steven J. Luckner, Esq.
10 Madison Avenue, Suite 400
Morristown, New Jersey 07960
steven.luckner@ogletreedeakins.com

Dated: June 29, 2020

## CERTIFICATION PURSUANT TO LOCAL RULE 11.2

I, Steven J. Luckner, Esq., counsel for Defendant, certify that the matter in controversy is not the subject of any other action pending in any court, or of any pending arbitration or administrative proceeding.

Respectfully Submitted,

**OGLETREE, DEAKINS, NASH,
SMOAK & STEWART, P.C.**
*Attorneys for Defendant*

By:     *s/ Steven J. Luckner*
        Steven J. Luckner, Esq.
        10 Madison Avenue, Suite 400
        Morristown, New Jersey 07960
        steven.luckner@ogletreedeakins.com

Dated: June 29, 2020

# EXHIBIT A

**SMITH EIBELER, LLC**
Christopher J. Eibeler, Esq. ID#031772004
Meghan Chrisner-Keefe, Esq. ID#21052011
101 Crawfords Corner Road, Suite 1-105R
Holmdel, NJ 07733
(732) 444-1300
Attorneys for Plaintiff

Delivered 05 . 02 . 20 20
PSC4959
Authorized Person

------------------------------------------------------------X
NICHOLAS CAUGHEL,

      Plaintiff,

v.

TELADOC HEALTH, INC., JOHN DOES (1-10)
(fictitious names of unknown persons) and
ABC COMPANIES (1-10) (fictitious names of
unknown entities),

      Defendants.
------------------------------------------------------------X

SUPERIOR COURT OF NEW JERSEY
LAW DIVISION: MONMOUTH COUNTY
DOCKET NO.: MON-L-001637-20

Civil Action

SUMMONS

**THE STATE OF NEW JERSEY TO:**

TELADOC HEALTH, INC.
Corporation Service Company d/b/a CSC Lawyers Inc
211 E. 7th Street, Suite 620
Austin, TX 78701

     The plaintiff, named above, has filed a lawsuit against you in the Superior Court of New Jersey. The Complaint attached to this Summons states the basis for this lawsuit. If you dispute this Complaint, you or your attorney must file a written answer or motion and proof of service with the deputy clerk of the Superior Court in the county listed above within **35** days from the date you received this Summons, not counting the date you received it. (A directory of the addresses of each deputy clerk of the Superior Court is available in the Civil Division Management Office in the county listed above and online at http://www.judiciary.state.nj.us/pro se/10153 deptyclerklawref.pdf.) If the complaint is one in foreclosure, then you must file your written answer or motion and proof of service with the Clerk of the Superior Court, Hughes Justice Complex, CN-971, Trenton, NJ 08625-0971. A filing fee payable to the Treasurer, State of New Jersey and a completed Case Information Statement (available from the deputy clerk of the Superior Court) must accompany your answer or motion when it is filed. You must also send a copy of your answer or motion to plaintiffs' attorney whose name and address appear above, or to plaintiffs, if no attorney is named. A telephone call will not protect your rights; you must

1

file and serve a written answer or motion (with fee of $175.00 and completed Case Information Statement) if you want the court to hear your defense.

If you do not file and serve a written answer or motion within 35 days, the court may enter a judgment against you for the relief plaintiff demands, plus interest and costs of suit. If judgment is entered against you, the Sheriff may seize your money, wages or property to pay all or part of the judgment.

If you cannot afford an attorney, you may call the Legal Services office in the county where you live or the Legal Services of New Jersey Statewide Hotline at 1-888-LSNJ-LAW (1-888-576-5529). If you do not have an attorney and are not eligible for free legal assistance, you may obtain a referral to an attorney by calling one of the Lawyer Referral Services. A directory with contact information for local Legal Services Offices and Lawyer Referral Services is available in the Civil Division Management Office in the county listed above and online at http://www.judiciary.state.nj.us/prose/10153_deptyclerklawref.pdf.

Dated:    May 29, 2020                         */s/ Michelle M. Smith*
                                               **MICHELLE M. SMITH,**
                                               **Clerk of the Superior Court**


Name of Defendants to be served:    TELADOC HEALTH, INC.

Address for Service:                 TELADOC HEALTH, INC.
                                     Corporation Service Company d/b/a CSC Lawyers Inc
                                     211 E. 7th Street, Suite 620
                                     Austin, TX 78701

**SMITH EIBELER, LLC**
Christopher J. Eibeler, Esq. ID#031772004
Meghan Chrisner-Keefe, Esq. ID#21052011
101 Crawfords Corner Road, Suite 1-105R
Holmdel, NJ 07733
(732) 444-1300
Attorneys for Plaintiff

-------------------------------------------------------------X

| | |
|---|---|
| NICHOLAS CAUGHEL, | : |
| | : |
| Plaintiff, | : |
| | : |
| v. | : |
| | : |
| TELADOC HEALTH, INC., JOHN DOES (1-10) | : |
| (fictitious names of unknown persons) and | : |
| ABC COMPANIES (1-10) (fictitious names of | : |
| unknown entities), | : |
| | : |
| Defendants. | : |
| | : |

SUPERIOR COURT OF NEW JERSEY
LAW DIVISION: MONMOUTH COUNTY
DOCKET NO.:

Civil Action

COMPLAINT AND JURY DEMAND

-------------------------------------------------------------X

Plaintiff, Nicholas Caughel, having an address of 99 Manor Parkway, Lincroft, New Jersey (hereafter "Plaintiff") by way of Complaint against Defendants, Teladoc Health, Inc., John Does (1-10) (fictitious names of unknown persons) and ABC Companies (1-10) (fictitious names of unknown entities), (hereafter collectively referred to as "Defendants"), says as follows:

## FACTS COMMON TO ALL COUNTS

1.     Defendant, Teladoc Health, Inc. ("Teladoc" or the "Company") is an industry-leading technology company that specializes in virtual healthcare, connecting medical professionals to their patients via telephone, video or iPhone application. Teladoc is located at 1945 Lakepointe Drive, Lewisville, Texas.

2.      Defendants ABC Companies (1-10) are fictitious sole proprietorships, companies, limited liability companies, partnerships, and/or other companies/entities which are not specifically named Defendants, who are unknown to Plaintiff at this time but which may be identified during discovery in this matter and which are responsible to Plaintiff for the claims set forth herein and/or which companies are responsible to Plaintiff as an employer, joint employer, alter ego, integrated employer and/or an aider and/or abettor for claims set forth herein.

3.      Defendants John Does (1-10) are fictitious persons who are not specifically named Defendants, who are unknown to Plaintiff at this time, but who may be identified during discovery in this matter and who are responsible to Plaintiff for the claims set forth herein.

4.      Plaintiff began his employment with the Company on or about March 1, 2016, in the position of Director of Digital Marketing.

5.      As Director of Digital Marketing, Plaintiff's duties and responsibilities included but was not limited to developing strategies for reaching eligible members, building awareness and understanding of the Teladoc service, driving registration and engagement of the product through social, search, retargeting and digital display, streaming tv and radio.

6.      Plaintiff consistently performed above the Company's expectations throughout his employment.

7.      Plaintiff's satisfactory job performance is reflected in his positive performance evaluations and performance-based bonuses he received throughout his employment.

8.      More specifically, Plaintiff's manager wrote the following comments in Plaintiff's 2016 Annual Performance Review:

2

i.   "Nick single handedly established a digital marketing program for Teladoc. He successfully launched, learned and evolved strategies across multiple paid media channels. He also played an important role in establishing channel attribution reporting."

ii.  "Nick is doing a great job at driving impact and campaign effectiveness at the broad scale Teladoc level."

iii. "Nick is an extremely valuable member of our team."

iv.  "Nick brought a great level of industry insights and thought leadership that helped shape our priorities, focus areas and strategies."

9.   Further, Plaintiff's manager wrote the following comments in Plaintiff's 2016 Annual Performance Review:

i.   "Nick is our resident ad tech expert. He proactively identifies cutting edge trends and spearheads implementation of these advancements at Teladoc."

ii.  "He is always willing to try new technologies and take calculated risks to help us grow and advance our digital capabilities. His energy and enthusiasm are infectious."

iii. "Nick successfully expanded our digital reach in 2017. He identified and implemented new strategies to scale our reach and advance our targeting capabilities. The introduction of household data targeting expanded our ability to reach eligible members by 386.8% year over year."

3

          iv.  "Nick on-boarded/trained 2 additional employees who were completely new to digital marketing. Nick has successfully built Teladoc's digital marketing talent."

10.    The Company's overall rating of Plaintiff's 2018 Annual Performance Review was "Successful Performance."

11.    Plaintiff's manager wrote the following comments in his year-end 2018 Performance Review:

          i.  "Nick successfully pivoted our Data management practices to be fully compliant under the new laws."

          ii.  "Nick took a leadership role in pulling together our very first Member Engagement Summit."

          iii.  "Nick successfully onboarded external agency resources to help us manage paid search."

          iv.  "Nick has a wealth of information and knowledge that can be useful for the Engagement Consultants and other channel owners on the team."

12.    Throughout his employment with the Company, Plaintiff primarily worked remotely from his residence in New Jersey.

13.    Approximately one to two days per week, Plaintiff would either commute 2 hours to the Company's office located in Purchase, New York, or take a bus into Manhattan to attend meetings and/or perform other work assignments.

14.    On or about  May 3, 2019 Plaintiff learned that his wife was pregnant and that they were expecting twins.

4

15.     Plaintiff's wife's estimated due date was December 31, 2019.

16.     Shortly thereafter, Plaintiff informed the Company that he and his wife were expecting twins.

17.     Plaintiff further informed the Company that he intended to take parental leave after his twins were born, pursuant to state and federal law and the Company's new paid paternity leave policy.

18.     The Company's newly initiated paid paternity leave policy offered employees six (6) weeks of paid paternity leave.

19.     In response to Plaintiff's leave request, the Company agreed to provide Plaintiff a total of ten (10) weeks of leave.

20.     On or about December 20, 2019, Plaintiff's twins were born.

21.     Plaintiff's leave was approved through March 1, 2020.

22.     Just prior to Plaintiff's return from paternity leave, the Company contacted Plaintiff and directed him to report to the Company's Purchase, New York, office upon his return on March 2, 2020.

23.     On March 2, 2020, Plaintiff returned from paternity leave and as directed, he reported to the Company's Purchase, New York, office.

24.     Shortly after his arrival, Plaintiff met with Nik Nanis, President of Commercial Business.

25.     During the meeting, Mr. Nanis raised an ongoing discussion of potentially moving Plaintiff into a new position on his team.

5

26.   The new role Mr. Nanis was proposing be created for Plaintiff focused on vetting, prioritizing and implementing all product and Information Technology requests coming from the marketing department.

27.   Moving Plaintiff into a new role had been previously discussed by several Company employees over the course of about six (6) months leading up to Plaintiff taking paternity leave.

28.   Prior to his paternity leave, Plaintiff and Mr. Nanis had engaged in several communications concerning Plaintiff's potential transfer to the Commercial Business team.

29.   During his paternity leave, Plaintiff continued the dialog with Mr. Nanis and his team regarding the potential new role and Plaintiff's fit on the team.

30.   After his meeting with Mr. Nanis on the day he returned from paternity leave, Opeyemi Oluwole, Senior Vice President of Consumer Engagement and Experience for the Company requested Plaintiff meet with her and Human Resources representative Sara Tirgari.

31.   During the meeting, Plaintiff's employment was terminated.

32.   The Company informed Plaintiff that the reason for his termination was due to a restructuring.

33.   Upon information and belief, Plaintiff was the only employee of the Company who was terminated.

34.   The Company made no effort or attempt to secure Plaintiff another position within the Company, including the position he had been discussing with Mr. Nanis for the past several months.

35.     After his termination, Plaintiff requested that the Company assist him finding a new position with the Company.

36.     There were open positions within the Company for which Plaintiff was qualified.

37.     To that end, Plaintiff scheduled a telephone call with Human Resources to discuss opportunities within the Company.

38.     Without explanation, Human Resources did not show up for the telephone call as scheduled or otherwise communicate with Plaintiff to cancel the call.

39.     Despite Plaintiff's requests, the Company refused to assist Plaintiff in securing a new position within the Company.

40.     The alleged Reduction-in-Force ("RIF") that resulted in the elimination of Plaintiff's position was not made in good faith.

41.     Instead, the alleged RIF was motivated by illegitimate, discriminatory and retaliatory reasons.

42.     The alleged RIF was not adequately analyzed or documented by the Company.

43.     The Company failed to utilize adequately documented selection criteria and procedures for implementation.

44.     The alleged RIF was not made on the basis of objective job-related selection criteria and procedures by reference to the individuals occupying the affected positions.

45.     The alleged RIF was not based on fair and objective evaluations of Plaintiff and the employees retained to perform Plaintiff's job duties and responsibilities.

46.     The Company took no actions to assist Plaintiff in obtaining a different position within the Company.

7

47. There were several jobs within the Company that were open for which Plaintiff was qualified at the time the Company terminated his employment and thereafter.

48. Plaintiff requested that the Company consider him for any and all available job openings.

49. Despite Plaintiff's request, Defendants provided no assistance to Plaintiff in obtaining a new position and declined to consider Plaintiff for any open position.

50. As a result of the above retaliatory, discriminatory and unlawful conduct of Defendants, Plaintiff suffered and continues to suffer significant emotional distress and other compensatory damages.

**FIRST COUNT**

**VIOLATION OF THE FAMILY AND MEDICAL LEAVE ACT ("FMLA")**
**U.S.C. § 2601, et seq.**

51. Plaintiff repeats and realleges each of the prior allegations of the within Complaint as if set forth at length herein.

52. At all relevant times, the Company was an employer within the meaning of the FMLA.

53. At all relevant times, Plaintiff was an eligible employee within the meaning of the FMLA.

54. Plaintiff's family leave is a qualifying event for leave entitlement as defined by FMLA.

55. On or about January 1, 2020 through March 2, 2020, Plaintiff took a family leave of absence that was protected under the FMLA.

8

56.    The Company was obligated to return Plaintiff to the same or equivalent position upon his return from FMLA leave.

57.    By terminating Plaintiff and not providing him an equivalent position, Defendants unlawfully interfered with, restrained, retaliated and denied the exercise of and/or Plaintiff's ability to exercise rights provided to him by the FMLA.

58.    Plaintiff has been prejudiced by the Company's FMLA violations.

59.    Defendants ABC Companies (1-10) and John Does (1-10) participated in, condoned, ratified, perpetuated, conspired, incited, coerced, induced and/or aided and/or abetted the FMLA violations.

60.    The aforesaid conduct by the Company was, and is, a willful violation of the FMLA.

61.    As a direct and proximate result of the Company's violation of the FMLA, Plaintiff has suffered emotional distress, economic loss and other compensatory damages.

**WHEREFORE**, Plaintiff demands judgment against the Company for harm suffered due to the aforesaid FMLA violations as follows:

A.    Compensatory damages equal to all wages, salary, employment benefits, and other compensation denied or lost by Plaintiff, pursuant to 29 U.S.C. §2617(a)(1)(A)(i)(I);

B.    Pre-judgment interest pursuant to 29 U.S.C. §2617(a)(1)(A)(ii);

C.    Liquidated damages pursuant to 29 U.S.C. §2617(a)(1)(A)(iii);

D.    Attorneys' fees, expert witness fees and costs pursuant to 29 U.S.C. §2617(a)(3);

E.    Post-judgment interest and enhancements to off-set negative tax consequences;

F.    Any and all attorneys' fees, expenses and/or costs, including, but not limited to, court costs, expert fees and all attorneys' fees incurred by Plaintiff in the prosecution of

9

this suit (including enhancements thereof required to off-set negative tax consequences and/or enhancements otherwise permitted under law);

G.     Order declaring that the Company has violated the FMLA and requiring the Company to take appropriate corrective action to end discrimination in the workplace; and

H.     Such other relief as may be available pursuant to the FMLA and which the Court deems just and equitable.

## SECOND COUNT

### VIOLATION OF THE NEW JERSEY FAMILY LEAVE ACT ("NJFLA")
### N.J.S.A. 34:11B-1, et. seq.

62.     Plaintiff repeats and realleges each of the prior allegations of the within Complaint as if set forth at length herein.

63.     At all times relevant, the Company was an employer within the meaning of the NJFLA.

64.     At all times relevant, Plaintiff was an eligible employee within the meaning of the NJFLA.

65.     Plaintiff took a protected family leave pursuant to the NJFLA as a result of the birth of his infant twins.

66.     The Company was obligated to return Plaintiff to the same or equivalent position upon his return from NJFLA leave.

67.     By terminating Plaintiff and not providing him an equivalent position, Defendants unlawfully interfered with, restrained, retaliated and denied the exercise of and/or Plaintiff's ability to exercise rights provided to him by the NJFLA.

10

68.     Plaintiff has been prejudiced by the Company's violations.

69.     The aforesaid conduct by the Company was willful violations of the NJFLA.

70.     Defendants ABC Companies (1-10) and John Does (1-10) participated in, condoned, ratified, perpetuated, conspired, incited, coerced, induced and/or aided and/or abetted the NJFLA violations.

71.     As a direct and proximate result of the Company's violations of the NJFLA, Plaintiff has suffered, and continues to suffer, emotional distress, economic loss and other damages.

**WHEREFORE**, Plaintiff demands judgment against the Company for harm suffered due to the aforesaid NJFLA violations as follows:

A.      Back pay and benefits;

B.      Front pay and benefits;

C.      Compensatory damages;

D.      Consequential damages;

E.      Equitable relief;

F.      Punitive damages;

G.      Pre-judgment interest and enhancements to off-set negative tax consequences;

H.      Any and all attorney's fees, expenses and/or costs, including, but not limited to court costs, expert fees, and all attorney fees incurred by Plaintiff in the prosecution of this suit (including enhancements thereof required to off-set negative tax consequences and/or enhancements otherwise permitted under law);

I.      Declaring that the Company has violated the NJFLA and requiring the Company to take appropriate corrective action to end discrimination in the workplace; and

11

J.     Such other relief as may be available pursuant to the NJFLA and/or which the

Court deems just and equitable.

**THIRD COUNT**

**NEW JERSEY LAW AGAINST DISCRIMINATION – GENDER DISCRIMINATION**
**N.J.S.A.10:5-1, et  seq. ("LAD")**

72.     Plaintiff repeats and realleges each and every prior allegation of the Complaint as

set forth at length herein.

73.     During all times relevant to this cause of action, the Company is an "employer" as

those terms are defined by the LAD, N.J.S.A.10:5-5(a) and (c).

74.     During all times relevant to this cause of action, Plaintiff is a "person" and

"employee" as those terms are defined by the LAD, N.J.S.A.10:5-5(a) and (f).

75.     Plaintiff was performing to the reasonable expectations of Defendants throughout

his employment.

76.     The discrimination and other adverse employment actions taken against Plaintiff

by Defendants, including the termination of Plaintiff's employment, were the result of Plaintiff's

sex.

77.     The Company did not treated women differently, and did not terminate their

employment , for taking family leave to give birth and care for the newborn baby.

78.     Defendants' acts or omissions were the cause of Plaintiff's harm and were

actuated by actual malice or accompanied by wanton and willful disregard of Plaintiff, who

foreseeably was harmed by those acts or omissions.

12

79.     Defendants ABC Companies (1-10) and John Does (1-10) participated in, condoned, ratified, perpetuated, conspired, incited, coerced, induced and/or aided and/or abetted the LAD violations.

80.     The aforementioned conduct by Defendants violated the LAD.

81.     As a direct and proximate result of Defendants' violation of the LAD, Plaintiff has suffered emotional distress, economic loss and other damages.

**WHEREFORE**, Plaintiff demands judgment against Defendants for harm suffered due to gender discrimination in violation of the LAD as follows:

A.     Back pay and benefits;

B.     Front pay and benefits;

C.     Compensatory damages;

D.     Consequential damages;

E.     Punitive damages;

F.     Prejudgment interest and enhancements to off-set negative tax consequences;

G.     Any and all attorneys' fees, expenses and/or costs, including, but not limited to, court costs, expert fees and all attorneys' fees incurred by Plaintiff in the prosecution of this suit (including enhancements thereof required to off-set negative tax consequences and/or enhancements otherwise permitted under law);

H.     Such other relief as may be available pursuant to the LAD and which the Court deems just and equitable;

I.     Ordering Defendants to take appropriate corrective action to stop and prevent retaliation at the workplace;

J.      Ordering Defendants to undergo anti-discrimination training;

K.      Ordering Defendants to undergo anti-retaliation training;

L. Ordering Defendants to engage a research organization to assess the effectiveness of their anti-discrimination training;

M.      Ordering Defendants to engage a research organization to assess the effectiveness of their anti-retaliation training;

N. Ordering Defendants to identify an appropriate professional to investigate any future complaints of discrimination;

O. Ordering Defendants to identify an appropriate professional to investigate any future complaints of retaliation; and

P. Such other relief as may be available and which the Court deems just and equitable.

## FOURTH COUNT

### LAD – RETALIATION

82.     Plaintiff repeats and realleges each and every prior allegation of the Complaint as set forth at length herein.

83.     Defendants' conduct and/or treatment of Plaintiff, including but not limited to the termination of his employment and refusal to place Plaintiff in another position within the Company, was in retaliation for Plaintiff's exercise, attempted exercise and/or enjoyment of rights provided to him under the LAD.

84.     The retaliatory actions taken by Defendants against Plaintiff are in violation of the LAD.

14

85.     Defendants' acts or omissions were the cause of Plaintiff's harm and were actuated by actual malice or accompanied by wanton and willful disregard of Plaintiff, who foreseeably was harmed by those acts or omissions.

86.     Defendants ABC Companies (1-10) and John Does (1-10) participated in, condoned, ratified, perpetuated, conspired, incited, coerced, induced and/or aided and/or abetted the LAD violations.

87.     As a direct and proximate result of Defendants' violation of the LAD, Plaintiff has suffered emotional distress, economic loss and other damages.

**WHEREFORE,** Plaintiff demands judgment against Defendants for harm suffered due to disability discrimination in violation of the LAD as follows:

A.     Back pay and benefits;

B.     Front pay and benefits;

C.     Compensatory damages;

D.     Consequential damages;

E.     Punitive damages;

F.     Prejudgment interest and enhancements to off-set negative tax consequences;

G. Any and all attorneys' fees, expenses and/or costs, including, but not limited to, court costs, expert fees and all attorneys' fees incurred by Plaintiff in the prosecution of this suit (including enhancements thereof required to off-set negative tax consequences and/or enhancements otherwise permitted under law);

H. Such other relief as may be available pursuant to the LAD and which the Court deems just and equitable;

15

I.   Ordering Defendants to take appropriate corrective action to stop and prevent retaliation at the workplace;

J.   Ordering Defendants to undergo anti-discrimination training;

K.   Ordering Defendants to undergo anti-retaliation training;

L.   Ordering Defendants to engage a research organization to assess the effectiveness of their anti-discrimination training;

M. Ordering Defendants to engage a research organization to assess the effectiveness of their anti-retaliation training;

N.  Ordering Defendants to identify an appropriate professional to investigate any future complaints of discrimination;

O.  Ordering Defendants to identify an appropriate professional to investigate any future complaints of retaliation; and

P.  Such other relief as may be available and which the Court deems just and equitable.

## FIFTH COUNT

### DECLARATORY JUDGMENT AS TO THE UNENFORCABILITY OF THE EMPLOYMENT AGREEMENT

88.    Plaintiff repeats and realleges each of the prior allegations of the within Complaint as if set forth at length herein.

89.    At the time Plaintiff accepted his employment with the Company, the Company required Plaintiff enter into certain Restrictive Covenants, that restrict his ability to secure new employment because of certain non-solicitation and non-competition restrictive covenants contained in the Offer Letter provided to him.

16

90.    After unlawfully terminating Plaintiff's employment, the Company informed Plaintiff that he remains "bound to any agreement [he] may have signed upon accepting an offer of employment from [the Company]."

91.    The Company further offered Plaintiff a document entitled, "Severance Agreement, Waiver and General Release", which reads in relevant part:

> This Agreement contains the complete understanding between the parties, with the exception of the Non-Compete, Non-Solicitation and Confidentiality Agreement, which shall remain in full force and effect. The parties agree that no promises or agreements shall be binding or shall modify this understanding unless in writing and signed by both parties.

92.    For the reasons set forth herein, including but not limited to the involuntary and/or unlawful termination of Plaintiff's employment, the non-solicitation and non-competition restrictive covenants cannot be enforced as a matter of contract law, equity and/or public policy.

93.    Defendants have no protectable interest in enforcing the non-solicitation and non-competition restrictive covenants and preventing Plaintiff from securing new employment after the involuntary and/or unlawful termination of his employment.

94.    As a direct and proximate result of the Defendants' unlawful actions, Plaintiff has suffered damages.

**WHEREFORE**, Plaintiff demands judgment against Defendants for harm suffered as follows:

A.    Declaring any agreements that restrict Plaintiff's ability to solicit and/or compete in a new position are invalid and unenforceable;

B.    Compensatory damages;

C.    Consequential damages;

17

D.      Pre-judgment interest;

E.      Any and all attorneys' fees, expenses and/or costs, including, but not limited to, Court costs, expert fees and all attorneys' fees incurred by Plaintiff in the prosecution of this suit; and

F.      Such other relief as may be available and which the Court deems just and equitable.

SMITH EIBELER, LLC

By:      */s/ Christopher J. Eibeler*
        **CHRISTOPHER J. EIBELER**

Dated: May 27, 2020

## CERTIFICATION

Pursuant to Rule 4:5-1, it is hereby stated to the best of my knowledge and belief that the matter in controversy is not the subject of any other action pending or contemplated in any other court or of a pending arbitration proceeding.  Further, Plaintiff is unaware of any non-party who should be joined in the action pursuant to R. 4:28 or who is subject to joinder pursuant to R. 4:29-1(b) because of potential liability to any party on the basis of the same transactional facts.   I further certify that confidential personal identifiers have been redacted from documents now submitted to the court, and will be redacted from all documents submitted in the future in accordance with Rule 1:38-7(b).

SMITH EIBELER, LLC

By:      */s/ Christopher J. Eibeler*
        **CHRISTOPHER J. EIBELER**

Dated: May 27, 2020

18

## JURY DEMAND

Plaintiff hereby demands trial by jury on all issues so triable.

SMITH EIBELER, LLC

By:   */s/ Christopher J. Eibeler*
CHRISTOPHER J. EIBELER

Dated: May 27, 2020

## DESIGNATION OF TRIAL COUNSEL

Pursuant to Rule 4:25-4, Christopher J. Eibeler, Esq. is designated as trial counsel for the above-captioned matter.

SMITH EIBELER, LLC

By:   */s/ Christopher J. Eibeler*
CHRISTOPHER J. EIBELER

Dated: May 27, 2020

# Civil Case Information Statement

**Case Details: MONMOUTH | Civil Part Docket# L-001637-20**

**Case Caption:** CAUGHEL NICHOLAS  VS TELADOC
HEALTH, INC.

**Case Initiation Date:** 05/27/2020

**Attorney Name:** CHRISTOPHER J EIBELER

**Firm Name:** SMITH EIBELER LLC

**Address:** 101 CRAWFORDS CORNER RD STE 1-105R
HOLMDEL NJ 07733

**Phone:** 7324441300

**Name of Party:** PLAINTIFF : CAUGHEL, NICHOLAS

**Name of Defendant's Primary Insurance Company**
(if known): Unknown

**Case Type:** LAW AGAINST DISCRIMINATION (LAD) CASES

**Document Type:** Complaint with Jury Demand

**Jury Demand:** YES - 6 JURORS

**Is this a professional malpractice case?**  NO

**Related cases pending:** NO

**If yes, list docket numbers:**

**Do you anticipate adding any parties (arising out of same
transaction or occurrence)?** NO

**Are sexual abuse claims alleged by: NICHOLAS CAUGHEL?** NO

**THE INFORMATION PROVIDED ON THIS FORM CANNOT BE INTRODUCED INTO EVIDENCE**
CASE CHARACTERISTICS FOR PURPOSES OF DETERMINING IF CASE IS APPROPRIATE FOR MEDIATION

**Do parties have a current, past, or recurrent relationship?** YES

**If yes, is that relationship:** Employer/Employee

**Does the statute governing this case provide for payment of fees by the losing party?** YES

**Use this space to alert the court to any special case characteristics that may warrant individual
management or accelerated disposition:**

**Do you or your client need any disability accommodations?** NO
   **If yes, please identify the requested accommodation:**

**Will an interpreter be needed?** NO
   **If yes, for what language:**

**Please check off each applicable category:** Putative Class Action? NO  Title 59? NO  Consumer Fraud? NO

I certify that confidential personal identifiers have been redacted from documents now submitted to the
court, and will be redacted from all documents submitted in the future in accordance with *Rule* 1:38-7(b)

05/27/2020
Dated

/s/ CHRISTOPHER J EIBELER
Signed

MON L 001637-20  05/28/2020 4:28:36 AM Pg 1 of 1 Trans ID: LCV2020952399

```
MONMOUTH COUNTY
SUPERIOR COURT
PO BOX 1269
FREEHOLD          NJ 07728
                                        TRACK ASSIGNMENT NOTICE
COURT TELEPHONE NO. (732) 358-8700
COURT HOURS  8:30 AM - 4:30 PM


                    DATE:   MAY 27, 2020
                    RE:     CAUGHEL NICHOLAS  VS TELADOC HEALTH, INC.
                    DOCKET: MON L -001637 20


    THE ABOVE CASE HAS BEEN ASSIGNED TO:  TRACK 3.

    DISCOVERY IS   450 DAYS AND RUNS FROM THE FIRST ANSWER OR 90 DAYS
FROM SERVICE ON THE FIRST DEFENDANT, WHICHEVER COMES FIRST.

    THE PRETRIAL JUDGE ASSIGNED IS:  HON ANDREA I. MARSHALL

    IF YOU HAVE ANY QUESTIONS, CONTACT TEAM     002
AT:  (732) 358-8700.


    IF YOU BELIEVE THAT THE TRACK IS INAPPROPRIATE YOU MUST FILE A
CERTIFICATION OF GOOD CAUSE WITHIN 30 DAYS OF THE FILING OF YOUR PLEADING.
    PLAINTIFF MUST SERVE COPIES OF THIS FORM ON ALL OTHER PARTIES IN ACCORDANCE
WITH  R.4:5A-2.
                    ATTENTION:

                              ATT: CHRISTOPH J. EIBELER
                              SMITH EIBELER LLC
                              101 CRAWFORDS CORNER RD
                              STE 1-105R
                              HOLMDEL             NJ 07733


ECOURTS
```